# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MARY TRUVILLION**                                  **CIVIL ACTION**

**VERSUS**                                           **NO. 13-3706**

**CAROLYN W. COLVIN, ACTING COMMISSIONER**    **SECTION: "G"(1)**
**SOCIAL SECURITY ADMINISTRATION**

## ORDER AND REASONS

Before the Court are Plaintiff Mary Truvillion's ("Plaintiff") objections[1] to the January 2, 2014 Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant the Acting Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act").[3] The parties filed cross-motions for summary judgment.[4] The Magistrate Judge recommended that Plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion be granted.[5] Plaintiff objects, requesting that the case be reviewed *de novo* and the claim be remanded to the Administrative Law Judge ("ALJ") for a new hearing.[6] Having considered Plaintiff's objections, the cross motions for summary judgment, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, for the following reasons the Court will

---

[1] Rec. Doc. 19.

[2] Rec. Doc. 18.

[3] Rec. Doc. 1.

[4] Rec. Docs. 16 and 17.

[5] Rec. Doc. 18 at 31.

[6] Rec. Doc. 16.

overrule Plaintiff's objections, adopt the Magistrate Judge's Report and Recommendation and dismiss this action with prejudice.

## I. Background

### A. Procedural History

On November 27, 2006, Plaintiff submitted an application for SSI alleging an onset date of November 15, 2006, which was denied.[7] There was a hearing before an ALJ, and an unfavorable decision was issued on June 20, 2008.[8] On December 5, 2008, the Appeals Council upheld the ALJ's decision.[9]

On March 7, 2009, Plaintiff submitted another application for SSI alleging an onset date of November 15, 2006.[10] Plaintiff reported hypertension, arthritis, diabetes and degenerative disc disease.[11] On August 5, 2009, Plaintiff's application was denied.[12] On March 10, 2010, there was a hearing before an ALJ.[13] Participating were Plaintiff, her counsel, a vocational expert, and Kweli Amusa, M.D., a medical expert.[14] The ALJ determined the doctrine of res judicata applied to the period from November 15, 2006 through June 20, 2008, and therefore that period was not

---

[7] Adm. Rec. at 118, 304–6.

[8] *Id*. at 118.

[9] *Id*.

[10] *Id*. at 307.

[11] *Id*. at 334.

[12] *Id*. at 150–53.

[13] *Id*. at 118.

[14] *Id*.

considered.[15] On May 24, 2010, the ALJ issued an unfavorable decision.[16] Plaintiff requested review by the Appeals Council.[17]

On October 20, 2010, while her appeal was pending, Plaintiff submitted another claim for SSI.[18] On December 3, 2010, a state agency determined that Plaintiff was disabled.[19] On March 25, 2011, the Appeals Council indicated that it would combine the May 24, 2010 decision with the December 3, 2010 determination and remand them to an ALJ for more action and a new decision.[20] On June 6, 2011, the Appeals Council remanded the matter to the ALJ for further proceedings.[21]

On January 26, 2012, there was hearing before the ALJ.[22] Plaintiff participated by telephone, her counsel was present at the hearing, and a medical expert, Dr. Earl Beard, also participated by telephone.[23] On April 3, 2012, there was a further hearing before the ALJ where Plaintiff, her counsel and a vocational expert were present.[24]

On April 19, 2012, the ALJ issued a decision denying Plaintiff's applications for benefits.[25]

---

[15] *Id.* at 115–32.

[16] *Id.* at 209–13.

[17] *Id.*

[18] *Id.* at 139.

[19] *Id.* at 139–46.

[20] *Id.* at 214–17.

[21] *Id.* at 133–36.

[22] *Id.* at 69–83.

[23] *Id.*

[24] *Id.* at 84–113.

[25] *Id.* at 14–28.

The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[26] At step

one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since February

11, 2009, the application date.[27] At step two, the ALJ concluded that Plaintiff has the following

severe impairments: "degenerative disc disease of the lumbar and thoracic sections of the spine,

fibromyalgia, osteoarthritis, chronic pain, hypertension, diabetes mellitus and anxiety."[28] At step

three, the ALJ held that Plaintiff did not have an impairment that meets or medically equals the

severity of one of the listed impairments under the regulations.[29] At step four, the ALJ found that

Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in

---

[26] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[27] Adm. Rec. at 17.

[28] *Id.*

[29] *Id.*

4

20 C.F.R. § 416.967(a) except she "requires the ability to alternate positions as needed while remaining on task."[30] The ALJ also imposed the following restrictions on Plaintiff's activity:

> She can never climb ladders, ropes, and scaffolds, but can occasionally crouch, crawl, kneel, balance, stoop, and climb ramps and stairs. She can perform frequent fine manipulation with the bilateral hands, and she must avoid concentrated exposure to extreme heat, cold, and vibration. She can only perform simple, repetitive, and routine work of an unskilled nature.[31]

At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work.[32] However, at step five, the ALJ determined that given Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.[33] Therefore, the ALJ determined that Plaintiff was not under a disability since February 11, 2009, the date the application was filed.[34]

The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on March 21, 2013.[35] On May 22, 2013, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act,[36] and this matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On August 27, 2013, the Commissioner answered the complaint.[37]

---

[30] *Id.* at 18.

[31] *Id.*

[32] *Id.* at 26.

[33] *Id.* at 27.

[34] *Id.* at 28.

[35] *Id.* at 1–4.

[36] Rec. Doc. 1.

[37] Rec. Doc. 14.

On October 9, 2013, Plaintiff filed a motion for summary judgment and memorandum in support arguing: (1) the January 26, 2012 hearing transcript is incomplete and insufficient because relevant portions of Dr. Beard's testimony are inaudible; (2) Plaintiff was denied the opportunity to meaningfully cross-examine Dr. Beard; and (3) the ALJ failed to include in the RFC limitations imposed by Dr. Amusa.[38] On November 21, 2013, the Commissioner filed a cross-motion for summary judgment and memorandum in support.[39]

### B. Report and Recommendation Findings

The Magistrate Judge issued her Report and Recommendation on January 2, 2014.[40] The Magistrate Judge provided a detailed summary of the testimony given at the March 10, 2010 hearing, the January 26, 2012 hearing and the April 3, 2012 hearing.[41] She also provided a detailed summary of the medical evidence from 2006 through 2011.[42]

The Magistrate Judge found substantial evidence to support the ALJ's determination on Plaintiff's credibility and the ALJ's finding that there was minimal material change in her condition after the May 24, 2010 decision.[43] The Magistrate Judge found that the inaudible portions of Dr. Beard's testimony did not affect the ability of the ALJ to render an informed decision on Plaintiff's application for SSI benefits.[44]

---

[38] Rec. Doc. 16-2 at 20.

[39] Rec. Doc. 17.

[40] Rec. Doc. 18.

[41] *Id.* at 7–12.

[42] *Id.* at 12–23.

[43] *Id.* at 28.

[44] *Id.* at 28 (citing *Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995).

The Magistrate Judge found that Plaintiff had not demonstrated that she was prejudiced by Dr. Beard testifying by phone.[45] She noted that the ALJ accorded little weight to Dr. Beard's testimony, finding it was unclear that he had actually considered the evidence.[46] Further, the Magistrate Judge agreed with the ALJ's determination that Dr. Beard's opinion was fairly consistent with the record.[47]

Finally, the Magistrate Judge addressed Plaintiff's contention that the RFC was not based on substantial evidence.[48] She noted that Dr. Amusa stated that Plaintiff should have the ability to change positions as needed for her comfort.[49] She also noted that during the March 10, 2010 hearing the vocational expert testified that there were sedentary positions available where the individual could stand up and stretch.[50] However, the vocational expert also testified that if the individual had to take a 10 minute break every hour there would be no jobs available to accommodate that restriction.[51] In the April 3, 2012 hearing, the ALJ added the phrase "while remaining on task," which the Magistrate Judge found to be consistent with Dr. Amusa's testimony regarding Plaintiff's restrictions.[52] Accordingly, the Magistrate Judge found Plaintiff's claim without merit.[53]

---

[45] *Id.* at 29.

[46] *Id.* (citing Adm. Rec. at 25).

[47] *Id.*

[48] *Id.* at 30.

[49] *Id.* (citing Adm. Rec. at 45).

[50] *Id.* (citing Adm. Rec. at 65).

[51] *Id.* (citing Adm. Rec. at 65).

[52] *Id.* at 31 (citing Adm. Rec. at 107).

[53] *Id.*

*A. Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on January 14, 2014.[54] Plaintiff objects to the Magistrate Judge's finding that there was substantial evidence to support the ALJ's finding that there was minimal material change to her condition after the May 24, 2010 decision.[55] She argues that this case was before the ALJ due to "the inconsistency between the prior May 2010 decision that was based on Dr. Amusa's testimony and the December 2010 opinion of Dr. Lee that was based on a record containing evidence not reviewed by Dr. Amusa."[56] She notes that the Appeal Council ordered the ALJ to develop the record and obtain medical expert testimony if necessary.[57] She argues that the ALJ obtained medical expert testimony from Dr. Beard, evidencing that the ALJ believed medical expert testimony was necessary to decide the case.[58]

Plaintiff contends that the ALJ obtained Dr. Beard's testimony via telephone, in violation of 20 C.F.R. § 404.936.[59] She asserts that after the supplemental hearing the ALJ indicated that she needed to review Dr. Beard's testimony, but portions of Dr. Beard's testimony were inaudible.[60] She argues that the ALJ relied on Dr. Amusa's testimony from March 2010 because she could not rely

---

[54] Rec. Doc. 19.

[55] Rec. Doc. 19-1 at 1.

[56] *Id.*

[57] *Id.* at 1–2.

[58] *Id.* at 2.

[59] *Id.*

[60] *Id.*

on Dr. Beard's testimony.[61] She notes that the ALJ indicated that the recent medical records did not "document any material change."[62] She argues that material change is not an issue in her case.[63] She alleges that she has been disabled from February 2009 through the ALJ's April 2012 decision.[64] She argues that the ALJ relied on "Dr. Amusa's outdated testimony that was not based on the newer evidence of record, resulting in a decision that is based on the ALJ's lay conclusion that a medical experts opinion would not have changed in light of new medical evidence."[65] She contends that absent Dr. Beard's testimony, the only other medical opinion based upon the entire record was Dr. Lee's opinion that Plaintiff is disabled.[66] Further, she argues that the ALJ did not rely totally on Dr. Amusa's testimony.[67] Accordingly, she contends that "the administrative record is patently inadequate to support the ALJ's findings and the decision should be reversed."[68]

Plaintiff argues "use of the telephone hindered the ability of Dr. Beard, counsel, and the ALJ to communicate intelligibly."[69] She argues "Dr. Beard repeatedly asked the ALJ to repeat the questions, and ultimately Dr. Beard asserted that he had already answered a question that the record reveals he had not answered; and Counsel had to abandon her attempt at cross-examination."[70]

---

[61] *Id.* (citing Adm. Rec. at 24).

[62] *Id.* at 3.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 4.

[66] *Id.*

[67] *Id.*

[68] *Id.* (citing *Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995).

[69] *Id.* at 5 (citing Adm. Rec. at 78–82).

[70] *Id.* (citing Adm. Rec. at 80).

Plaintiff acknowledges that she "carries the burden of showing the error was harmful," but she contends "when the circumstances of the case make clear that the error was harmful, nothing further is required."[71] She asserts that "a procedural error is harmful when it 'would cast into doubt the existence of substantial evidence to support the ALJ's decision.'"[72] She argus "the harm is clear given that counsel was attempting to attack the evidentiary basis of Dr. Beard's opinion and was unable to do so because of the difficulty communicating via telephone."[73] Plaintiff objects to the Magistrate Judge's finding that even if cross-examination was hampered by the use of the telephone, there was no prejudice because the ALJ accorded little weight to Dr. Beard's testimony.[74] She contends the error was not harmless because if she had the opportunity to cross-examine Dr. Beard she could have obtained testimony favorable to her case or been able to successfully attack the basis of Dr. Beard's testimony.[75]

Plaintiff objects to the Magistrate Judge's finding that including the phrase "the ability to alternate positions as needed while remaining on task" in Plaintiff's RFC determination was consistent with Dr. Amusa's opinion.[76] She cites Social Security Rulings 83-12 and 96-9p, arguing that the RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing.[77] She contends that Dr. Amusa testified that she could stand/walk for

---

[71] *Id.* (citing *Shineski v. Sanders*, 556 U.S. 396, 410 (2009)).

[72] *Id.* (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

[73] *Id.* (citing Adm. Rec. at 78–80).

[74] *Id.*

[75] *Id.* at 6.

[76] *Id.*

[77] *Id.* at 7.

two hours and sit for two and one-half hours, with the ability to change positions as needed.[78] She argues that "Dr. Amusa did not testify that [she] could remain on task when her pain required her to change positions and the very limited abilities of standing/walking and sitting reveals that remaining on task when changing positions is directly contrary to Dr. Amusa's opinion."[79] Accordingly, she argues there is no evidentiary basis for the ALJ's inclusion of "while remaining on task" in the RFC.[80]

## B. The Commissioner's Response

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing posted on January 14, 2014.

## III. Standard of Review

### A. Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A District Judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter.[81] The District Judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to." A District Court's review is limited to plain error of parts of the report which are not properly objected to.[82]

### B. Standard of Review of Commissioner's Final Decision on SSI and DIB Benefits

---

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[82] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[83] Appellate review of the Commissioner's denial of SSI and DIB benefits[84] is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[85] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[86] The Court must review the whole record to determine if such evidence exists.[87] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[88] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[89] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's

---

[83] 42 U.S.C. § 405(g).

[84] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1382 n. 3 (5th Cir. 1988).

[85] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[86] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[87] *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986).

[88] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[89] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

subjective evidence of pain and disability; and (4) his age, education, and work history."[90]

The Court notes that both Plaintiff and the Commissioner moved for summary judgment. The standard of review applicable to such motions requires that a moving party establish that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.[91] Under 42 U.S.C. § 405(g), however, this Court may examine only the pleadings and the record relied upon by the ALJ. Thus, there cannot generally be a disputed issue of fact before the Court in Social Security appeals.[92] Instead, "[t]he issue is whether the action of the Secretary is supported by the Record."[93] The Fifth Circuit has regularly allowed district courts to rule on Social Security disputes through the summary judgment procedure, when "the district court has adequately reviewed the record and based its judgment on a finding of substantial evidence in the administrative record."[94]

## IV. Law and Analysis

### A. Was the Record Inadequate to Support the ALJ's Conclusions?

Plaintiff objects to the Magistrate Judge's finding that there was substantial evidence to support the ALJ's finding that there was minimal material change to her condition after the May 24, 2010 decision. She asserts that the ALJ improperly applied the standard of "no material change" in her case. She contends that the ALJ erred in relying on Dr. Amusa's opinion because it was not

---

[90] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[91] FED. R. CIV. P. 56(c).

[92] *See Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).

[93] *Id.* (citing *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977)).

[94] *Id.*; *see also, e.g.*, *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (setting forth both the summary judgment and substantial evidence standards of review).

based on the newer evidence of record. She asserts that the ALJ relied upon her own lay conclusion that a medical experts opinion would not have changed in light of new medical evidence. She contends that absent Dr. Beard's testimony, the only other medical opinion based upon the entire record was Dr. Lee's opinion that Plaintiff is disabled.

The June 16, 2011 order of remand issued by the Appeals Council ordered the ALJ to do the following: (1) request updated evidence of Plaintiff's impairments from her treating sources; (2) obtain additional evidence concerning her impairments to complete the record in accord with the regulatory standards; (3) if necessary, obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments; and (4) if warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on her occupational base.[95] In accordance with this order, the ALJ obtained updated medical records from Plaintiff's treating sources, and reviewed all of the additional evidence.[96] The ALJ also obtained testimony from an impartial medical expert, Dr. Beard.[97]

It is undisputed that the parties experienced some difficulty communicating with Dr. Beard during the January 26, 2012 hearing, and several portions of the transcript reflect that his testimony was inaudible. Plaintiff contends the ALJ obtained medical expert testimony from Dr. Beard, evidencing that the ALJ believed medical expert testimony was necessary to decide the case. However, during the January 26, 2012 hearing, the ALJ noted that there were problems with Dr. Beard's testimony.[98] The ALJ indicated that she would review Dr. Amusa's testimony in greater

---

[95] Adm. Rec. at 134–36.

[96] *Id.* at 22–23.

[97] *Id.* at 23.

[98] *Id.* at 81.

detail and determine whether it was necessary to schedule testimony from a new medical expert.[99] After reviewing the record, the ALJ accorded substantial weight to the testimony of Dr. Amusa and little weight to the opinion of Dr. Beard.[100] This determination was clearly within the ALJ's discretion and consistent with the Appeal Council's order that she obtain evidence from a medical expert, if necessary. The ALJ obtained additional testimony from Dr. Beard, but ultimately determined it was entitled to little weight. Because the ALJ found the updated medical records did not document any material change to Plaintiff's condition, she relied upon the opinion of Dr. Amusa, essentially finding additional expert testimony unnecessary.[101]

Plaintiff contends that the ALJ ultimately relied on her own lay opinion in determining that there was no material change to Plaintiff's condition following the May 24, 2010 decision. Plaintiff cites *Frank v. Barnhart*, in which the Fifth Circuit noted that the ALJ had drawn medical conclusions from data without relying on an expert opinion.[102] In *Frank*, the ALJ opined that consultative examinations of the claimant "revealed no evidence of atrophy."[103] The Fifth Circuit found that "the ALJ made his own medical conclusions about whether a patient would show signs of atrophy or muscle tone loss as a result of Frank's alleged impairments."[104] The Fifth Circuit noted that the "Seventh Circuit has, in several cases, warned ALJ's against 'playing doctor' and making

---

[99] *Id.*

[100] *Id.* at 24–25.

[101] *Id.* at 24.

[102] 326 F.3d 618, 622 (5th Cir. 2003).

[103] *Id.*

[104] *Id.*

their own independent medical assessments."[105] However, the Fifth Circuit declined to reach the merits of this argument noting that even if the ALJ was in error such error was harmless because "the overwhelming factor in the decision was medical evidence from a variety of sources indicating that Frank could indeed hold down her old job as a clerical worker."[106]

In the instant case, the ALJ did rely on medical evidence in determining that there was no material change to Plaintiff's condition following the May 24, 2010 decision. On August 18, 2010, a CT scan of Plaintiff's lumbar spine revealed a disc bulge at L4-L5 and a possible disc bulge at L5-S1.[107] These findings were consistent with Plaintiff's November 15, 2006 CT scan and the October 1, 2007 MRI, which were part of the record upon which Dr. Amusa relied.[108] Further, as the Magistrate Judge noted, after the May 24, 2010 decision there was no change to Plaintiff's symptoms except she experienced difficulty in being weaned off of Xanax and a brief psychotic episode just before testing positive for Phencyclidine and barbiturates.[109]

Plaintiff argues that absent the opinion of Dr. Beard, the only other medical opinion based upon the entire record was Dr. Lee's opinion that Plaintiff is disabled. The ALJ accorded Dr. Lee's opinion little weight, finding it was inconsistent with the record considered in its entirety.[110] "The ALJ is free to reject the opinion of any physician where the evidence supports a contrary

---

[105] *Id.*

[106] *Id.*

[107] Adm. Rec. at 773.

[108] *Id.* at 446, 722–23.

[109] Rec. Doc. 18 at 27. See also Adm. Rec. at 22–23.

[110] *Id.* at 25.

conclusion."[111] On December 3, 2010, Dr. Lee completed a one page disability determination form recommending that Plaintiff's residual functional capacity was less than sedentary.[112] The ALJ thoroughly analyzed both the medical evidence and Plaintiff's credibility and determined that Dr. Lee's opinion was inconsistent with the record considered in its entirety.

Based on the foregoing, the Court finds that there was substantial evidence to support the ALJ's finding that there was minimal material change to Plaintiff's condition after the May 24, 2010 decision. Accordingly, on *de novo* review, the Court finds Plaintiff has not demonstrated that the inaudible portions of Dr. Beard's testimony affected the ability of the ALJ to render an informed decision in Plaintiff's application for SSI benefits.[113]

## B. Did Plaintiff have a Sufficient Opportunity to Cross-Examine Dr. Beard?

Plaintiff objects to the Magistrate Judge's finding that even if cross-examination was hampered by the use of the telephone, there was no prejudice because the ALJ accorded little weight to Dr. Beard's testimony. She contends the error was not harmless because if she had the opportunity to cross-examine Dr. Beard she could have obtained testimony favorable to her case or been able to successfully attack the basis of Dr. Beard's testimony.

Plaintiff contends that the ALJ obtained Dr. Beard's testimony via telephone, in violation of 20 C.F.R. § 404.936.[114] "[T]he burden of showing that an error is harmful normally falls upon the

---

[111] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[112] Adm. Rec. at 707.

[113] *See Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995).

[114] Plaintiff acknowledges that following the hearing and ALJ decision in this case, 20 C.F.R. § 404.936 was amended to allow the taking of testimony via telephone.

party attacking the agency's determination."[115] "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."[116] Plaintiff contends that the harm is clear given that counsel was attempting to attack the evidentiary basis of Dr. Beard's opinion and was unable to do so because of the difficulties caused by communicating via telephone. Plaintiff misapplies the standard. As discussed thoroughly above, the ALJ gave little weight to the opinion of Dr. Beard, and there was substantial evidence to support the ALJ's decision. Accordingly, on *de novo* review, the Court finds Plaintiff's has not demonstrated that she was prejudiced by Dr. Beard testifying by phone.

### C. Did Substantial Evidence Supported the ALJ's RFC Determination?

Plaintiff objects to the Magistrate Judge's finding that including the phrase "the ability to alternate positions as needed while remaining on task" in Plaintiff's RFC determination was consistent with Dr. Amusa's opinion. She cites Social Security Rulings 83-12 and 96-9p, arguing that the RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing. She contends that Dr. Amusa testified she could stand/walk for two hours and sit occasionally. She asserts that occasionally means up to one-third of the workday or approximately two and one-half hours. She argues that these restrictions reveal that remaining on task when changing positions is directly contrary to Dr. Amusa's position. Accordingly, she contends there is no evidentiary basis for the ALJ's inclusion of "while remaining on task" in the RFC determination.

---

[115] *Shineski v. Sanders*, 556 U.S. 396, 409 (2009).

[116] *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

At the March 10, 2010 hearing, Dr. Amusa testified, in part, that,

> I would restrict her to . . . not having to lift anything greater than 10 pounds, and . . . she should have the ability to change positions as, as needed for her comfort, her pain; that she should not have any, any problem with standing or walking for at least 2 hours in a day.[117]

Dr. Amusa noted that Plaintiff could "occasionally . . . climb stairs, occasionally balance, sit, kneel and crouch.[118] Dr. Amusa also stated that Plaintiff would be restricted to "sedentary-type activity" based on her chronic pain not objective physical findings.[119]

The ALJ found that Plaintiff retained the RFC to perform sedentary work except she "requires the ability to alternate positions as needed while remaining on task."[120] The ALJ also imposed the following restrictions on Plaintiff's activity:

> She can never climb ladders, ropes, and scaffolds, but can occasionally crouch, crawl, kneel, balance, stoop, and climb ramps and stairs. She can perform frequent fine manipulation with the bilateral hands, and she must avoid concentrated exposure to extreme heat, cold, and vibration. She can only perform simple, repetitive, and routine work of an unskilled nature.[121]

The Social Security Regulations define sedentary work as involving lifting no more than ten pounds at a time, occasionally lifting small items, and sitting with a certain amount of walking and standing.[122] The Social Security Administration has issued several rulings addressing the definition of sedentary work and the implications of the need to alternate sitting and standing. Social Security

---

[117] Adm. Rec. at 45.

[118] *Id.*

[119] *Id.* at 57.

[120] *Id.* at 18.

[121] *Id.*

[122] 20 C.F.R. §§ 404.1567, 416.967. *Carnahan v. Apfel*, 247 F.3d 241, (5th Cir. 2001).

Ruling ("SSR") 83-10 states that, for sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."[123] SSR 83-12 notes that some individuals must alternate periods of sitting and standing.[124] "Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work."[125] However, "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."[126] In such cases, SSR 83-12 directs adjudicators to consult with a vocational specialist "to clarify the implications for the occupational base."[127]

SSR 96-9p defines a full range of sedentary work as remaining "in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."[128] Jobs are sedentary if walking and standing are required "occasionally," which SSR 96-9p defines as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."[129] If an individual needs to alternate between sitting and standing, "[w]here this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary

---

[123] SSR 83-10, 1983 WL 31251, *5. The Fifth Circuit has noted that "[t]he Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance." *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001). *See also Alfred v. Barnhart*, 181 F. App'x 447 (5th Cir. 2006) (citing SSR 96-8p).

[124] *Id.* at *4.

[125] *Id.*

[126] *Id.*

[127] *Id.*

[128] SSR 96-9p, 1996 WL 374185, *6.

[129] *Id.* at *3.

work will be eroded."[130] The extent of erosion will depend on the facts, including the frequency of the need to alternate.[131] The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.[132]

Dr. Amusa testified that Plaintiff could sit occasionally, which is defined as one-third of the work-day. However, the Court finds substantial medical evidence to support the ALJ's finding that Plaintiff could perform sedentary work, which requires sitting approximately 6 hours of an 8-hour workday. On August 3, 2009, a disability determination medical consultant indicated that Plaintiff could sit "about 6 hours in an 8-hour work day."[133] Although his opinion was given little weight by the ALJ, Dr. Beard also testified that Plaintiff could perform sedentary to light activity, with a sit/stand option.[134] Further, Dr. Amusa also testified that Plaintiff could perform sedentary-type activity. Accordingly, the Court finds sufficient evidence to support the ALJ's finding that Plaintiff could perform sedentary work with restrictions.[135]

The Court also finds the ALJ's RFC determination that Plaintiff must "change positions as needed while remaining on task" consistent with Dr. Amusa's testimony. Dr. Amusa testified that

---

[130] *Id.* at *7.

[131] *Id.*

[132] *Id.*

[133] *Id.* at 569.

[134] *Id.* at 77–78.

[135] In her Motion for Summary Judgment, Plaintiff argued that the RFC was not based on substantial evidence because it stated she needed to change positions "as needed while remaining on task," which she argued was inconsistent with Dr. Amusa's testimony that she be able to change positions as needed for pain. In her objections to the Report and Recommendation, Plaintiff argues, for the first time, that the RFC determination was also inconsistent with Dr. Amusa's testimony that Plaintiff could sit occasionally. The Court notes that this testimony on its face is inconsistent with a finding that Plaintiff could perform sedentary work, which would require sitting for up to six hours. However, the Court finds Plaintiff's argument without merit because there was substantial evidence to support the ALJ's determination that Plaintiff could perform sedentary work.

Plaintiff should have the ability to change positions as needed for pain; she did not indicate that changing positions would require Plaintiff to take a break from work. Therefore, the Court finds the RFC determination was consistent with Dr. Amusa's testimony.

Finally, the Court rejects Plaintiff's argument that the RFC assessment was not specific as to the frequency of the individual's need to alternate between sitting and standing. The ALJ specifically found that Plaintiff must be able to change positions as needed while remaining on task. Consistent with the requirements of SSR 83-12 and 96-2p the ALJ also consulted with a vocational specialist to clarify the implications of this restriction. At the April 13, 2012 hearing, the ALJ asked the vocational expert if an individual could perform sedentary work with the limitation that "she requires the ability to alternate positions on an as needed basis while remaining on task."[136] The vocational expert testified that there were unskilled, sedentary jobs available that would accommodate this limitation.[137] Accordingly, on *de novo* review, the Court finds substantial evidence to support the ALJ's RFC determination.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Plaintiff's objections**;**

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** the Plaintiff's motion for summary judgment[138] is **DENIED**;

---

[136] *Id.* at 107.

[137] *Id.* at 108.

[138] Rec. Doc. 12.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment[139]

is **GRANTED** and that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, on this __23rd__ day of September, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[139] Rec. Doc. 14.